Thank you, Your Honor. May it please the Court, I am Bill Waddell and it's my privilege to represent Roy Burns. This is a prisoner case and it involves three issues on appeal. One only involves the separate appellee, Renita White. There's an administrative exhaustion issue as to her and as to the other two issues about use of excessive force and deliberate indifference in not allowing him to decontaminate. That involves Eaton, Edward Eaton. And if the Court reaches Renita White's part, it would also involve her. The facts of this case are pretty simple. He was locked in a shower cell decontaminating himself from scabies medicine when Edward Eaton ordered him to stop. He did not. And he cussed Mr. Eaton and Mr. Eaton sprayed him with pepper spray. He continued to enter. Cuss seems like a very bland description of his conduct. It's a rough world in there. He threw things twice and spit the third time. Is that right? After he cussed him, instead of Mr. Eaton leaving, he stayed and he threw his soap dish at Eaton and he came up to the bar, sprayed him a second time. The third time, again, Mr. Eaton not leaving according to what was required by the prison regulations. He continued to interact and Mr. Burns spit on him, continued cursing him, and Mr. Eaton ran. Not just cursing. He said, I'm going to stab you the next time I'm able to, right? He did, and he used some choice words with that. And he came back and sprayed him again. Now, the facts are, as I said, are relatively, I think, undisputed. What the court has added to what I've said, I think, is agreed to by Mr. Eaton. And so that issue, we think there are genuine issues of material fact as to whether Well, it wasn't clear to me whether you concede that Eaton, I guess, was directed, but in any event left the area immediately after the third spraying. He did leave. And was not even allowed back. And so he was in no way responsible for monitoring Mr. Burns during the 10 or 15 minute delay in the showering. Before he left, he ordered the water turned off, though, so that he could not be decontaminated. That, we think, is the crucial fact. There's no way that for this 10 to 15 minute period that he could be decontaminated. Now, wait, he didn't order it turned off for 10 or 15 minutes. He ordered it turned off and left, right? That's correct. And then he was gone until Lieutenant Walker comes back. He wasn't allowed to come back. Until Lieutenant Walker comes back and orders it back on. Okay, but this liability is personal. Eaton is not responsible for anything that happened in the time after he's gone. We think he's responsible for ordering it turned off. Right. And so that state that he left Mr. Burns in is what we think is the issue about the use of, about not the deliberate indifference. Only if there's evidence that immediate washing is always, anything other than immediate washing is always excessive force when you're using pepper spray. And the argument from the other side is until someone is calmed down, officers are trained not to, you know, not to begin the decontamination or washing. Is that wrong? The flush requirement is it needs to be done promptly. And that's in the record. It's Administrative Regulation 410. Okay, but that's not the Constitution. So what case would stand for the proposition it's unconstitutional excessive force not to immediately flush pepper spray in all circumstances? It's not in all circumstances. It's a fact issue. And we're relying on Treats versus Morgan. But he wasn't there to observe. I'm having trouble seeing how you get around his absence. Well, he, I mean, the fact is he ordered the water turned off to a subordinate, Renee White, who did not turn it back on. And so as he left, I mean, that's the state that he ordered it left in. And I know the excessive force issue is a little bit different than just the turning off, because what he did in going up to the bars three times when he said he was trying to leave is the important thing, we think, for the excessive force. As the court's aware, we had the magistrate judge agreed with Mr. Burns on both the administrative exhaustion and on the failure to decontaminate. So there's a fact issue on this not allowing him to decontaminate as to both Eaton and as to White. And we rely in that case on similar pepper spray cases, which are the Treats versus Morgan. And Judge Murphy wrote the opinion in that case. And then there's Lawrence versus Bowersox that we also have relied upon. And there's a district court case that seems really close in Missouri called Wills versus Dodson. All three of those involve pepper spray. And the Jones versus Shields case is the first in this line. And what I think the Eighth Circuit is doing, has done in the previous cases, in Jones they seem to take the position you're taking, Judge Loken, and what in these. No, I'm still not taking the position. I'm just, you know, what case talks about immediate flushing is constitutionally required. I don't think there's a case that says that. It's whether they violated the prison regulation in a way that was not objectively necessary. Well, we've got a legion of cases saying that state law, including institutional regulations, are not the constitutional standard. Counsel, is this an excessive force claim or a deliberate indifference claim or some mixture of the two? The magistrate judge said there was an issue of fact as to the deliberate indifference claim. And the cases, the ones I've cited, treats Lawrence versus Bowersox and Wills versus Dodson, all involve pepper spray and all say it's an issue of fact. We think that there's a genuine issue of material fact in this case for a number of reasons. We also have alleged, contrary to what the magistrate judge said, Your Honor, that there's an excessive force claim for use of the pepper spray contrary to the prison regulations. The way he used it in this case is contrary to Sections 409 and 410 of the administrative directive, so the Arkansas Department of Corrections. He says, and it's, you know, I'm not a regular lawyer in terms of doing prison cases, but I'm actually shocked in the way that he handled this because he says, and this is in his affidavit in the record at Appendix 110 and 111, that he was trying to leave and he cursed me, so I sprayed him. And then he says, I attempted to leave again and he threw the dish at me and I sprayed him. And then I was trying to leave again and he spit on me and cursed me and said those words that Judge Loken mentioned. And so I sprayed him again and then I left. All of this is unnecessary, objectively unnecessary. It's all contrary to 409 and 410. Now, I understand the argument of the need to maintain discipline and all, but he's in a locked shower cell. It's not much bigger than this lectern with some extra feet behind it. He can't do anything to anybody. At what point did he put the handcuffs on? He didn't until after the third spraying and after Lieutenant Walker comes back in 10 to 15 minutes later. It is conceded that he refused to obey Edward Eaton. We understand that. But he, and the record reflects this, but in meeting with Mr. Burns as well, I understand his concern is that he had scabies medicine all over him. He had not had enough time to wash it off, and they wanted him to go back to a cell that they had not disinfected that had scabies. Is it excusable for him to disagree with the orders? No. But was the force used to make him comply necessary, objectively? No. Was it necessary? That's not the constitutional standard. I believe it is, Your Honor. In Treats v. Morgan, I think it quotes those factors citing Whitley v. Well, it's not cited in your reply brief, and then it's cited as a qualified immunity case. I'm relying on Treats v. Morgan and Lawrence v. Goss. And I think it cites the Supreme Court cases, including the Hudson v. McMillan and the Whitley v. Albert. What does the record show about that scabies medicine? Is it supposed to be washed off after they put it on? There's nothing other than the verified complaint saying that they were letting him wash it off. That's all it says, Your Honor. There's nothing about how it affects you. What we have in terms of injury, though, is he says that when they sprayed him, they sprayed him in his eyes, in his mouth, and in his genitals, and that there was extreme burning to the point that he cried. There was nothing he screamed. There was nothing, and he couldn't wash it off. I thought he refused or declined medical treatment 45 minutes later. Where's the medical evidence of burning? It's just his testimony in the verified complaint. And he declined medical treatment, right? The infirmary came by to flush his eyes, and he said he did not need that 45 minutes later. Was there any evidence of injury? Just his statement of the burning. That's one of the issues in Treats v. Morgan and Lawrence v. Bowersox, Your Honor, that it's not what would be the dollar value or how significant it is. It's is there an injury, and mental pain and suffering is sufficient under those two cases. I want to make sure the Court understands the facts are the facts. What we're saying is we had two judges, a magistrate judge and a district judge, both of whom I have great respect for, looked at the same evidence. One of them said it's an issue of fact. The other one said it's not. I think respectfully that Judge Wright, again, who I admire a lot, weighed the evidence instead of letting it be decided. And so we think on that deliberate indifference claim on the decontamination that it was not, that there was a genuine issue using these cases that we've cited. On the administrative exhaustion, I need to address that really quickly, is that as to why she was ordered to turn off the water and didn't turn it back on during this period. And what's important for us here is the cases that the Eighth Circuit has decided after Hammett v. Coffield, they're all unpublished procurium opinions, and they go different ways. There's two lines now about administrative exhaustion. And we concede he did not name White in the grievance. We concede that. Well, naming nobody versus naming less than all are completely different situations. I agree that the case is. If you name one or two out of three or four or five and the grievance is decided on the merits as to the claims against the one or two, you're arguing, well, we can say we're exhausted as to all five. That can't be right. I mean, that's not a legitimate extension of Hammett or Mallett, I mean. We know, Your Honor, that the district courts and the magistrate judges are struggling with this issue, and a lot of them are saying if it's decided on the merits, it doesn't matter. What's the struggle? They're all fact-intensive. That's not a struggle. It's deciding cases on their specific facts. Well, you can read the district court opinions even since we filed this appeal, and there's just a number of them where they continue to struggle with what is required. What's the struggle? If you decide on the merits, even if you don't name but one, can you go as to all the defendants? Or do you have to not name any? That's the issue. First of all, does the institution raise the defense? And second, how do they raise it? And third, how does the grievance decision read? If the grievance decision reads specifically against the person named, I don't have to struggle to say you're not exhausted as to somebody else you want to come into court about. That's not a struggle. That's just deciding a case on the facts. Where's the struggle? Well, the opinions say they don't know how to deal with it where less than all are named. If one's named, the courts are divided on whether they're going to address the issue or not as to those not named. But if none are named, they're saying we can address it as to all if it was decided on the merits. And so I'm just new. Not as to someone who was not fairly within the parameters of the grievance. Here, there was one single incident, and White was not named. But two very different roles. I understand you. I'm just pointing out the issue. I just, you know, this is manufactured struggling. I can cite the court to many cases at the district court level where they're having trouble with it. But let me just say, as the court knows, I'm appointed to represent Mr. Burns. And I hope that I've given voice to his arguments about this today. He is frustrated with this requirement of administrative exhaustion. And as his lawyer, I had a hard time understanding it as well. Well, we certainly appreciate your service as appointed counsel. And, you know, you've made the point well. And I understand the point. I'm not sure our district court judges need to find such a dilemma. And, I mean, I wrote Mallet. Maybe I should have just stuck with the institutional party line. Thank you. Thank you. Mr. Rowe. May it please the court. My name is Jay O'Howe, and I represent the athletes in this case. In short, Judge Wright got it right in this case. And this court should affirm because there are no facts to support that Mr. Burns was in any way relieved of ABC's requirement that he name someone in a grievance and exhaust that grievance before he sued them in court. And this court should affirm as to Eaton because the use of force was justified and the short delay before his decontamination shower did not amount to a constitutional violation of which a reasonable officer should have known. In Jones v. Bach, the Supreme Court made it clear that when analyzing exhaustion that we look to the details of each institution's policy. In this case, that's Administrative Directive 0901. In at least four different places in the policy, including the actual grievance form that the inmates fill out, they are directed to be specific as to the people that they are complaining about. Inmates have 15 days to file a grievance after an event occurs. This shower incident happened on July 2nd. On July 6th, Mr. Burns received notice that there was going to be a disciplinary hearing. Two days later, the hearing occurred, and he waived his appearance. He waived the opportunity to confront his witnesses, to tell his side of the story, and to find out the names of any of the people that might have been involved that he would not have known if he wanted to grieve about them. Six days after that, he filed his grievance. The only person he named was Sergeant Eaton. The only thing he complained about was the pepper spray. He didn't complain about the decontamination or being able to wash afterwards? No, sir. At one point down below in the briefs, Mr. Burns argues that he was not sure about the grievance procedure, that he was limited to the space. This court has made clear that an inmate's subjective belief about the particulars of the policy aren't relevant, but the record is actually clear in this case that Mr. Burns did understand the policy. In the appendix at pages 76 to 78, you'll find his grievance history that shows a number of grievances were fully exhausted before this incident occurred. And then in the original complaint and amended complaint, which appear at 20 and 30 in the appendix, he describes how the original grievance that he filled out and submitted to another officer who's not a part of this suit was lost. So when he did not receive a timely response, Mr. Burns submitted the original that he had retained and sent that on to the warden's office to further the grievance. The Hammett case does not stand for the proposition that a procedural defect amounts to a waiver of all other grievance requirements. And Hammett, frankly, has no bearing on this case. There was no procedural flaw on the part of ADC in this case. In likening this case to Hammett and Bower, the magistrate judge effectively imputed a factual or a substantive deficiency on the inmate's part to a procedural flaw by the Department of Correction, and that simply was not the case. I don't think the flaw, that's not the basis of Hammett. I mean, the basis of Hammett is that the institution chose to decide it on the merits, even if conceivably they could have not. That's not a flaw. That's choosing for often sound institutional reasons to give a complaining party a decision on the merits. When they chose to do that, then the institution's lawyers after the fact can't come running to us and say, this is an exhausted, read the Supreme Court's exhaustion cases. That's not, a flaw has nothing to do with that. Rather than a flaw, I probably should say a failure to take advantage of a procedural bar or choosing not to take advantage. But your client ruled on the merits. Yes, sir. Right. The question is, what did they rule on? The complaints about Eden. They ruled on the grievance filed. Yes, sir. Which was against Eden. Yes, sir. I agree with it. This is not Hammett. I mean, that's just. . . And my reading of Hammett is that it basically formalizes something that has been in practice in other circuits and even down at the district court level, and that's that there's essentially an equitable principle of estoppel when ADC does not take advantage of a procedural bar within the prison walls at that time when an inmate could still file another grievance about something. Then the lawyers can't come in maybe two, three years later and try to assert that same procedural bar that was not taken advantage of down below. As to the claims against Eden, the courts give deference to prison officials when they are acting to maintain order and discipline. This court has recognized that force is sometimes required, but it does not. . . Well, in this case, the prisoner was all locked up, so it wasn't. . . I apologize. So the guard wasn't in danger in any way. That Mr. Burns was in a shower cell does not change the necessary for officers to act immediately to try to maintain order and discipline within the institution. Had Mr. Burns just held the line of, I'm not going to come out of the cell, y'all can't make me leave, the case would have played out differently. At that point . . . Then I'll move on. Whenever dealing with use of pepper spray, it seems from the Shields case and subsequent cases that there is necessarily going to be some discomfort that's experienced by the person who was sprayed. And in determining whether or not there was actually an Eighth Amendment violation, you look at the circumstances in that case. In this instance, you had an inmate who had refused repeated orders and then began to actively assault an officer and did not relent in that assault until the officer finally decided that more action need be taken. The best thing to do at that point was to step away, go find a supervisor, and get ready to take more assertive action if need be. It turns out that the use of pepper spray worked. After somewhere, according to Mr. Burns, 10 to 15 minutes, he became compliant. He agreed to be handcuffed and he had his shower. About 20 minutes after that, he was offered an eye wash when medical came and he said that he didn't need it, that he was fine. I think the facts as far as the effects that were felt fall completely in line with Shields and are thus justified. And to the extent that Mr. Burns argues that there was a split of opinion down below as to whether or not there is an immediate requirement for flushing, that falls to the benefit of the department and that that right was not clearly established at this time. Do you read the district court's order as saying there is no claim of deliberate indifference or excessive force against Eaton because he left the area immediately and others were responsible for when the water got turned back on, or as saying that not being flushed for 10 or 15 minutes is not constitutionally excessive? I think that it can be read. She says both. Which do we take as, does she have to be right on both or only one? I don't think that she was in error to point out the possibility of both. Reading Shields and then a case that's cited by Mr. Burns, Walker devour socks. There is a parenthetical site to the Shields case and Your Honor's question earlier about does the Constitution require immediate flushing. In that parenthetical site in the Walker case, they describe the facts in Shields as being immediate flushing of the eyes. And that was from reading Shields, we know 10 to 20 minutes. So within the contours of Walker devoured socks and Shields, Mr. Burns did get immediate relief from the effects of the pepper spray. And as to whether or not there was deliberate indifference, if anything I think that that claim would go to in arguing that White was a subordinate of Sergeant Eaton, supervisory responsibility doesn't lie in 1983 actions, and there was no standing order given by Eaton that turn off the water, that inmate will not get a shower. It simply said turn off the water, and that was in the context of Mr. Burns refusing to become compliant. Some time went by, he became compliant, he was allowed to shower. And if there are no more questions, thank you very much. Was Officer White deposed? No, sir. Or submit an affidavit? Is there anything in the record that contains her explanation of why, of when she turned the water back on and why? Or did Walker turn it on? The record isn't clear as to exactly when that happened, but by my reading, Walker came in, talked to Burns, and that's when it was agreed he would submit to the restraints and he was allowed to shower. In the appendix at between 102 and 109, there are some incident forms from the officers that were on scene. That was Corporal Graham and Woodard, and then also Sergeant Eaton and Corporal White. Their statements only go to the actual use of force and don't discuss the delay that resulted in the shower. And because that was not ever grieved about, there was no record taken on those complaints. If there are any more questions, I'll turn the podium back over to Mr. Waddell. Thank you. Tom's time has expired. Pardon? Expired. I think we understand the issues, and they've been well presented, both in the brief Senate argument. Thank you, Counsel.